1

2

3

4

5

6

7

8

9

10

11

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12  **COLLEGE OF THE SEQUOIAS FARM,** ) | **1:07-CV-00014 AWI NEW** |
| **FOUR J FARMS, a California General** ) | **(WMW)** |
| 13  **Partnership, and JONATHAN TODD** ) | |
| **FERNANDES dba J. TODD** ) | |
| 14  **FERNANDES FARMS, individually and** ) | **MEMORANDUM OPINION** |
| **on behalf of themselves and all others** ) | **AND ORDER RE PETITION** |
| 15  **similarly situated,** ) | **FOR ORDER COMPELLING** |
| ) | **ARBITRATION AND** |
| 16  **Plaintiffs,** ) | **REQUEST FOR STAY** |
| ) | **PENDING ARBITRATION** |
| 17  **vs.** ) | |
| ) | |
| 18  **WHITE GOLD ASSOCIATION, INC., a** ) | [Doc. 7] |
| 19  **California corporation, COSTA** ) | |
| **COTTON COMPANY, INC., a** ) | |
| 20  **California Corporation, MARK COSTA,** ) | |
| **an individual, J. B. COTTON TRADING,** ) | |
| 21  **INC., a California corporation, CRAIG** ) | |
| **TOBIN, an individual, and DOES 1 -50,** ) | |
| 22  ) | |
| **Defendants.** ) | |
| 23  _____ ) | |

24

25

26

27        Plaintiffs College of the Sequoias Farm ("COS Farm"), Four J Farms, and J. Todd

28  Fernandes dba J. Todd Fernandez Farms (collectively "Plaintiffs"), on behalf of themselves

and all others similarly situated, have sued Defendants White Gold Association, Costa Cotton Company, Mark Costa, J. B. Cotton Trading, and Craig Tobin alleging, *inter allia*, conspiracy and fraud in connection with the marketing and sale of Plaintiffs' cotton under a series of contracts between the Cotton Cooperative Association ("CCA"), Plaintiffs, and White Gold concerning the handling, marketing, and sale of the growers' cotton.  The complaint sets forth the following causes of action:  1) Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 - 1968 ("RICO") [§ 1962(b)];  2) violation of RICO,§ 1962(c); 3) violation of RICO, §1962(c); 4) Fraud - misrepresentation; 5) Fraud - concealment; 6) breach of fiduciary duty; 7) constructive fraud based on fiduciary relationship; 8) accounting; and 9) conversion.  The complaint was filed in Kern County Superior Court and has been removed to this court by Defendants.

Defendants have filed a motion pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, to compel Plaintiffs to participate in an arbitration before the American Cotton Shippers Association ("ACSA"), contending that they are subject to mandatory arbitration. Defendants claim that, in connection with the services performed by CCA and White Gold, Plaintiffs agreed to become a member of the CCA and abide the CCA's By-Laws. They claim that these By-Laws require that disputes between members, such as Plaintiff, and the CCA must be resolved before the ACSA.   Defendants claim that as agents of the CCA, they are entitled to compel arbitration under federal case law. Defendants also claim that they are entitled to arbitration as both a signatory or non-signatories under well-established estoppel principles because Plaintiffs' claims against them are intertwined with the contracts under which Plaintiffs agreed to arbitration.  Finally, Defendants argue that Plaintiffs' claims fall within the scope of the arbitration provision, as Plaintiffs' factual allegations in the Complaint are intertwine with the subject matter of the relevant contracts.

As a separate matter, Defendants move, pursuant to 9 U.S.C. § 3,  for a stay of this action pending completion of arbitration.  The statute provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Plaintiffs oppose the petition for an order compelling arbitration on several grounds. Plaintiffs also move for a jury trial as to issues of fact presented in connection with the petition.

## FACTUAL BACKGROUND

Plaintiffs allege in their Complaint that during the crop years 2003-2004 and 2004-2005, they were customers of Defendants and entered into a contract with the CCA, a program administered by Defendants, for the exclusive sale and marketing of cotton produced by Plaintiffs. Plaintiffs allege that CCA is a cooperative marketing association organized under Texas law, and that under the CCA Contract, White Gold acts as an agent for CCA for purposes of enrolling the grower and receiving cotton from the grower on behalf of CCA. The terms of the contracts are set forth in two main documents - - the CCA Enrollment and Agent Contract and the CCA By-Laws. The first paragraph of the CCA enrollment and Agent Contract specifically provides:

By executing this document, the undersigned Producer becomes a member of the Cotton Cooperative Association ("CCA"), ("Association"), and agrees to the terms of the current CCA Membership and Marketing Agreement. The Producer waives his/its right to withdraw from membership in the Association during the crop year designated below. Producer does hereby authorize the Association and only the Association to handle the cotton produced by or for Producer during the crop year and on the lands designated herein. Producer acknowledges the Terms and Conditions and receipt of a copy of the Association's Membership and Marketing Agreement and By-laws. Producers has read and considered the Membership and Marketing Agreement, the Terms and Conditions hereof, and the Association's By-laws and agrees to abide by same. All of such are incorporated herein by reference and made a part hereof as fully and to the same extent as if set forth herein in full words and phrases.

The By-Laws govern member conduct, including resolution of disputes. Section 11.14 of the CCA By-Laws provides:

3

ARBITRATION: Any and all disputes between or among a member or members and the Association, and/or other members, whether arising in connection with or under the Membership and Marketing Agreement or in connection with the activities of the Association or otherwise, shall be subject to arbitration in accordance with the rules of the American Cotton Shippers Association.  By becoming a member of this Cooperative Association all members consent to arbitration and to said rules.

### JURY TRIAL

Plaintiffs request a jury trial on issues of fact presented in connection with their opposition to the petition for an order compelling arbitration.   Plaintiffs base their request on 9 U.S.C. § 4, which provides in part that, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 .  .  .  for an order directing that such arbitration proceed in the manner provided for in such agreement."  Section 4 further provides,

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.   If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue.  Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application,  demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.  If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed.  If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

In this case, Plaintiffs state that their request for a jury trial includes, but is not limited to, the following issues: 1) whether the allegations raised by Plaintiffs in their Complaint are within the scope of the trade dispute arbitration procedures referenced in the CCA By-Laws, and 2) whether there has been a "failure, neglect, or refusal" by Plaintiffs to arbitrate the claims raised in the Complaint.

In response, Defendants contend first that Plaintiffs are not entitled to a jury trial on

4

the scope of the trade dispute arbitration procedures referenced in the CCA By-Laws.  They argue that this issue cannot be considered an issue concerning "the making of the arbitration agreement" or an issue concerning the "failure, neglect, or refusal to perform" under the provision, and so is outside the issues amenable to resolution by jury under 9 U.S.C. § 4. Defendants further argue that Plaintiffs have failed to demonstrate the existence of any relevant contested factual issues concerning the scope of the arbitration provision for which a jury trial would be needed.  Specifically, Defendants argue that there is no question that Plaintiffs entered into the CCA Contracts, which incorporate the CCA By-Laws by reference, or that the arbitration provision found at Section 11.14 of the CCA By-Laws provides for the arbitration of "any and all" disputes "arising in connection with or under" the agreement.

Finally, Defendants note that Plaintiffs apparently seek to offer evidence to contradict this "any and all" language. claiming that the arbitration provision covers only "disputes as to matters of cotton "grade, quality, weights or fulfillment of contracts."  Defendants argue that such evidence is barred by the parole evidence rule.

The Ninth Circuit has noted that, "[courts have interpreted 9 U.S.C. § 4 to require a jury trial "only if there is a triable issue concerning the existence or scope of the agreement." Reilly v. WMW Financial Services, 95 Fed.Appx. 851, 852 (9th Cir. 2004), quoting Saturday Evening Post Co. v. Rumbleseat Press, 816 F.2d 1191, 1196 (7th Cir. 1987).   Thus, this court finds that the scope of trade dispute arbitration procedures referenced in the CCA By-Laws could potentially support a claim for a jury trial under 9 U.S.C. § 4.  However, the court finds that Plaintiffs have failed to demonstrate the existence of any contested factual issues concerning the existence or scope of the arbitration agreement for which a jury trial is required.  Plaintiffs have judicially admitted that they entered into the CCA Contracts, which incorporate the CCA By-Laws by reference.  Complaint at 10-11.  They have further judicially admitted that the terms of their contracts include both the CCA Enrollment and Agent Contract and the CCA By-Laws.  Complaint at 10:21-23.  See Am. Title Ins. Co. V.

<u>Lacelaw Corp</u>., 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.")(citing <u>White v. Arco/Polymers, Inc.</u>, 720 F.2d 1391, 1396 (5th Cir.1983)).

It originally appeared that Plaintiffs might have been attempting to use evidence in the form of their own declarations and the declaration of Mr. Gillen to explain the terms of the contract at issue. "It is a fundamental rule of contract law that the terms of a clear and unambiguous written contract cannot be changed by parole evidence." <u>United States v. Gamble</u>, 917 F.2d 1280, 1282 (10th Cir. 1990). "Extrinsic evidence is not admissible to contradict express terms in a written contract or to explain what the agreement was.   .   .   . The agreement is the writing itself." <u>Wagner v. Columbia Pictures Indus., Inc.</u>,  146 Cal.App.4th  586, 592 (Cal.Ct.App. 2007) (citing <u>Cerritos Valley Bank</u>, 81 Cal.App.4th 1108, 1115-16).  However, in their supplemental brief, Plaintiffs state that, "nothing in the substance of the declarations submitted is evidence offered by plaintiffs of either a prior agreement between the parties contradictory of the written contract at issue, or that is evidence of contemporaneous oral agreements(s) between the parties that seeks to contradict, modify or even explain the nature of the contract that is undisputed to apply in this case." Plaintiffs' Supplemental Brief, 6:21-25.  Accordingly, the court finds that no factual  issues concerning the existence or scope of the arbitration agreement for which a jury trial is required are raised by declarations offered by Plaintiffs.

Defendants contend second that a jury trial is also unwarranted on the issue of whether there has been a "failure, neglect or refusal" by Plaintiffs to arbitrate the claims raised in their complaint, a prerequisite for this court's jurisdiction pursuant to 9 U.S.C. Section 4. Defendants argue that Plaintiffs' own declarations establish that Plaintiffs refused arbitration prior to the filing of Defendants' motion.  For example, the Declaration of Michael J. Stump states in part that, "my office indicated to Mr. Hahesy that the plaintiffs would not submit to

arbitration before the ACSA."

Plaintiffs dispute this contention, arguing that they "have not failed, neglected or refused to arbitrate within the scope of the arbitration envisioned and intended by the arbitration clause set forth in the CCA By-Laws, section 11-14." This, of course, is simply an argument that Plaintiffs have no duty to arbitrate the claims they have brought in this action under the CCA Contracts. Plaintiffs provide no legal authority for the principle that a party may rely on their belief that the claims raised do not fall within the scope of an arbitration clause to assert that they have not "failed, neglected or refused to arbitrate." As Defendants explain, this nonsensical argument would allow any person to avoid arbitration agreements whenever that person claims to hold a subjective belief that the claims asserted in the litigation fall outside the scope of the arbitration agreement. Thus, the court finds that no genuine issue of fact exists as to whether there has been a "failure, neglect, or refusal" by Plaintiffs to arbitrate the claims raised in the Complaint. Accordingly, the court finds that no basis for a jury trial exists.

## EVIDENTIARY ISSUES

Plaintiffs' Objections

Plaintiffs object to portions of the declarations of Patrick D. Toole and Joni Stuart, both of which were submitted by Defendants in support of their motion to compel arbitration.

Declaration of Patrick Toole

Plaintiffs object to paragraph 5 of the Toole Declaration on the ground of relevance. That paragraph provides as follows:

> 5. White Gold Association, Inc. ("White Gold") is a Plaintiff in a case filed against Mr. Mendes individually and Jess Smith & Sons Cotton, LLC on January 21, 2005. The lawsuit concerns, in part, the loss of customers of White Gold, three of whom are the named Plaintiffs in the present action. According to their testimony, these three Plaintiffs left White Gold and became customers of Jess Smith & Sons.

Plaintiffs argue that the fact that one of the Defendants is also a plaintiff in unrelated litigation pending against third parties to the present case is not relevant to any issue of fact that is of

consequence and presented by Defendants' position here.

Plaintiffs also object to paragraph 6 of the Toole Declaration on the ground of relevance.   That paragraph provides, "I am informed that Libanio Mendes now works for Jess Smith & Sons."  Plaintiffs argue that the fact that a third party and stranger to the present litigation works for another third party and stranger to the litigation is irrelevant.

Finally, Plaintiffs object to paragraph 7 of the Toole Declaration on the grounds of relevance, incorporating the arguments made in regard to paragraphs 5 and 6.  Paragraph 7 provides:

> 7.  In November 2004, Jess Smith & Sons sued Mark Costa.  After an approximate five-week trial, a jury verdict in favor of Mr. Costa was rendered on May 26, 2006. Mr. Wegis and Mr. Stump, counsel for Plaintiffs in the instant case, were counsel for Jess Smith & Sons in the Costa action, and are co-counsel for Jess Smith & Sons in the White Gold action.

In response, Defendants argue that the above facts are relevant.  First, Plaintiffs have submitted the declaration of Libanio Mendes in opposition to Defendants' motion, in which he alleges that he took certain actions on Defendant White Gold's behalf.  Defendants argue that Mr. Mendes is now an employee of Jess Smith, and that Mr. Mendes and Jeff Smith are co-defendants in the White Gold Action.  Defendants argue that this evidence tends to show Mr. Mendes' bias against Defendants, and undermines the credibility and partiality of his declaration, is therefore admissible as relevant impeachment evidence.

Second, Defendants argue that the information is relevant to show bias on the part of Mr. Gillen.   They note that Ernst Schroeder, Jr., one of the principals of Jess Smith, sits on the Board of Directors for the ACSA, the entity for which Mr. Gillen works.   They argue that strong evidence exists suggesting that Mr. Gillen may be biased, including his two declarations.  Defendants argue that these demonstrate that Mr. Gillen has become an advocate for Plaintiffs.

The court agrees with Defendants that the challenged evidence is relevant to show possible bias on the part of both Medes and Gillen.  Accordingly, Plaintiffs' objections to this

1   evidence are OVERRULED.

2       Declaration of Joni Stuart

3       Plaintiffs object to paragraphs 2 and 3 and Exhibits A and C of the Stuart Declaration,

4   on grounds of relevance.  Paragraphs 2 and 3 and 4 provide as follows:

5       2.      I have personal knowledge of the following matters, except those stated on
        information and belief, and as to those matters I believe true, and if called as a witness
6       in this proceeding after being duly sworn, I could and would competently testify
        thereto.

7

8       3.      On February 28, 2007, I accessed the American Cotton Shipper's Association
        website.  A true and correct copy of the home page for this website is attached hereto
9       as Exhibit "A."  The website includes a section entitled "Trade with Member" which
        includes a further service that involves "Search Member Directory."  True and correct
10      copies of these items are attached hereto collectively as Exhibit "B" and incorporated
        herein.

11

12      4.      I proceeded to perform a search on the website using the search engine
        provided for the member directory.  I inserted the name of each of the Plaintiffs into
13      the member directory.  None of the Plaintiffs were identified as being members of the
        American Cotton Shipper's Association.  A true and correct copy of the results of
        those searches are attached hereto as Exhibit "C" and incorporated herein.

14

15  Plaintiffs object on the basis of relevance, arguing that whether Plaintiffs are members of the

16  ACSA is irrelevant to any issue in this case, and any implication that ACSA and Neal Gillen

17  are motivated to act in a particular way based on Plaintiffs' membership or lack thereof, is

18  irrelevant.  Finally, Plaintiffs argue that these portions of the Stuart Declaration are

19  inadmissible hearsay.

20      The court finds that these matters are relevant to issues in the present case.  As

21  Defendants point out in their response, Defendants have argued that under the ACSA

22  arbitration rules, in cases of a dispute involving a member and a nonmember, the arbitration

23  must be initiated within 30 days of the court order compelling arbitration.  Thus, they argue

24  that the 90-day rule, relied upon by Plaintiffs in support of several of their arguments, does

25  not apply.  Therefore, Plaintiffs' status as nonmembers is relevant to an issue in this case:

26  whether the 90-day rule applies.  Further, the court finds that Plaintiffs' hearsay objections to

27

28                                          9

be without merit, as the disputed materials fall within the hearsay exception set forth in Rule 803(6), Federal Rules of Evidence, for records of regularly conducted activities.  The evidence is also admissible under Rule 806, which provides for attacking and supporting the credibility of a declarant, to attack the credibility of Mr. Gillen's declarations.

Accordingly,  Plaintiffs' objections to the declaration of Joni Stuart are OVERRULED.

Defendants' Objections

First Declaration of Neal Gillen

Defendants object to several specific sections of first declaration of Neal Gillen. However, as set forth below, in addressing the merits of Plaintiffs' impossibility defense, Defendants respond to the substance of the first Gillen declaration.  The court's rulings on these responses, when applied to Plaintiffs' other contentions which relied on the First Gillen Declaration, resolve those contentions in Defendants' favor. Accordingly, the court finds Defendants' objections to the first Gillen Declaration to be moot and declines to rule on them.

Declaration of Michael Stump

Defendants object to portions of the declaration of Michael Stump, Plaintiffs' attorney. They object to paragraph 6 of Mr. Stump's declaration, in which he states:

> 6.  I have learned, from ACSA's General Counsel, Neal P. Gillen, Esq., that the ACSA Arbitration procedure and the rules that system uses and applies would not accept this matter for arbitration.  (*See*, concurrently filed Declaration of Neal P. Gillen ("Gillen Decl.".)  This is so primarily because the ACSA arbitration system is a system designed and intended for trade disputes involving the quality, weight, staple length and delivery of cotton.  (Gillen Decl.)  There are no such issues raised by plaintiffs in the Complaint in this case.

Defendants object to this paragraph on the grounds that it constitutes inadmissible hearsay under Rule 801, admissible lay opinion under Rule 701; and is irrelevant.

In response, Plaintiffs argue that the proffered testimony is not hearsay, but is instead offered as circumstantial evidence of the declarant's state of mind.  They also argue that it is not expert opinion, but is admissible lay opinion under Rule 701.  Finally, Plaintiffs argue that

it is relevant to show that the arbitration procedure to which Defendants seek to compel

Plaintiffs to participate would not accept the claims raised by Plaintiffs, because this has a

tendency to prove a material issue before the court, i.e., whether there was a meeting of the

minds in regard to agreeing to arbitration.  They also argue that the evidence is relevant to

show the futility of ordering the parties to arbitration.

The court rejects Plaintiffs claim that the above paragraph is not hearsay.  Contrary to

Plaintiffs' claim, the statement clearly _is_ offered for the truth of the matter, as evidenced by

Plaintiffs' own arguments regarding relevancy.  Circumstantial evidence of the declarant's

statement of mind is both unnecessary and duplicative, as direct evidence of Mr. Gillen's state

of mind has been offered in the form of his own declarations.  Thus, any testimony by Mr.

Stump as to Mr. Gillen's state of mind is unnecessary.

Accordingly, the court SUSTAINS Defendants' objection to paragraph 6 of Mr.

Stump's declaration and grants the request to exclude the paragraph on the ground that it

constitutes inadmissible hearsay.

Defendants object to paragraph seven of the Stump Declaration on grounds of

relevance.  Paragraph 7 provides as follows:

> On information and belief as to all times predating my involvement, and to my
> knowledge since my office became involved in litigation, the plaintiffs have never
> been asked by White Gold Association, Inc., or the Cotton Cooperative Association
> ("CCA") to arbitrate a dispute or disputes concerning the weight, quality, staple length
> or delivery of cotton subject to a CCA contract.

In response to Defendants' objection, Plaintiffs argue that this statement is relevant because of

Defendants' burden in this case to show a failure by Plaintiffs to arbitrate under the terms of

the contract.  The court finds that this statement is relevant to Plaintiffs' argument on that

issue.  Accordingly, the court OVERRULES Defendants' objection to paragraph 7.

Defendants also object to paragraph 8 of the Stump Declaration on the ground of

relevance.  Paragraph 8 provides:

> Further, on information and belief as to all times predating my involvement, and to my
> knowledge since my office became involved in this litigation, the plaintiffs have never

11

failed, neglected or refused to arbitrate any claim that is subject to and within the scope of arbitration pursuant to the terms of the CCA By-Laws – that is a trade dispute involving disagreement as to cotton quality, cotton eight, the staple length of cotton or the delivery of cotton from grower to merchant.

In response, Plaintiffs argue that this statement is relevant for the same reasons paragraph 7 is relevant. As with paragraph 7, the court finds that this statement is relevant to Plaintiffs' argument on the issue of whether Plaintiffs have failed  to arbitrate under the terms of the contract. Accordingly, the court OVERRULES Defendants' objection to paragraph 8.

Declarations of Jonathan Todd Fernandes, David Mendonca and Frank Eugene Junio

Defendants object to paragraphs 6, 7,8 and 9 of the Fernandes Declaration on the ground that this material is irrelevant and barred by the parole evidence rule.  In regard to relevance, Defendants argue that Plaintiffs have judicially admitted in their Complaint that the terms of the contract at issue in this case include both the CCA Enrollment and Agent Contract and the CCA By-Laws.  They argue that these admissions are conclusive and cannot be contradicted by self-serving declarations to the contrary.  See Am.Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988)("Factual assertions in pleadings .   .   .   are considered judicial admissions conclusively binding on the party who made them.").   In regard to their objection based on the parole evidence rule, Defendants argue that parole evidence cannot be admitted to show intention independent of an unambiguous written instrument.   The paragraphs at issue provide as follows:

6.      At the time I signed the CCA Enrollment and Agent Contract I was not provided a copy of the CCA By-Laws.

7.      I first learned that my agreement with the CCA was subject to arbitration when my attorney advised me that the defendants in this case were seeking an order compelling the plaintiffs' claims to arbitration before the National Cotton Shippers Association.

8.      Now that I have had the opportunity to review Section 11-14 of the CCA by-laws in conjunction with the documents presented to me by White Gold in early 2004, I agree that in the event of a dispute concerning the quality, weight, delivery, or staple length of the cotton produced by me and marketed by the CCA, that dispute would be subject to arbitration before the National Cotton Shippers Association.

9.      I was not informed by White Gold, and did  not agree that any and all legal claims I would ever have against the CCA and its Agent, White Gold, would be subject to arbitration and that by signing the agreement I was waiving my

right to a jury trial.  These matters were never discussed between me and White Gold as my agent.

Defendants object to paragraphs 7 through 10 of the Declaration of David Mendonca.  These paragraphs are nearly identical to and provide the same assertions as paragraphs 6 - 10 of the Fernandes Declaration.

Defendants object to paragraphs 6 -9 of the Declaration of Frank Eugene Junio as irrelevant and barred by the parole evidence rule.  These paragraphs are nearly identical to and provide the same assertions as paragraphs 6 - 10 of the Fernandes Declaration.

In regard to Defendants' objection to these paragraphs based on relevance, Plaintiffs that they do not seek to deny the existence of a contract between themselves and White God as an agent of the CCA. Rather they wish to provide evidence as to the correct interpretation of that contract.[1]

In regard to Defendants' objection based on the parole evidence rule, Plaintiffs state that in offering these declarations they "seek only to enlighten the court as to the nature of what they did and did not agree to when they signed up with White Gold for the marketing and sales of their cotton."  Plaintiffs' Response to Defendants' Objections, 8:15 -16.

"Under the parol evidence rule, extrinsic evidence is not admissible to contradict express terms in a written contract or to explain what the agreement was. [Citation.] The

---

[1]Plaintiffs state:
In support of this relevance objection, defendants would frame the issue to suggest that plaintiffs now seek to deny the existence of a contract between themselves and White Gold as an agent of the Cotton Cooperative Association (hereinafter "CCA").  This is not the case.  To the contrary, plaintiffs admit that the White Gold/CCA contract they signed, upon review of all the documents that compromise that contract, contains a provision that would require arbitration of a trade dispute as to matters of cotton grade, quality, weights, or fulfillment of contracts calling for delivery of cotton in a given crop year.  In support of their relevance objections, the defendants would have the court believe that the plaintiffs now seek to contradict the allegations set forth in the complaint by a series of "self-serving declarations to the contrary."  Because plaintiffs do not seek to accomplish any such thing – even if the cases cited by defendants were to apply in this context – the court need not entertain the substance of these objections.

Plaintiffs' Response to Defendants' Objections, 6:14 -24.

agreement is the writing itself. [Citation.] ... Parol evidence cannot ... be admitted to show intention independent of an unambiguous written instrument. [Citation.]" ( Sunniland Fruit, Inc. v. Verni (1991) 233 Cal.App.3d 892, 898 [284 Cal.Rptr. 824].) Cerritos Valley Bank v. Stirling, 81 Cal.App.4th 1108, 1115 - 16 (Cal.App. 2000).

The court finds that in this instance, under Plaintiffs' own explanations of the purpose for which they offer the declarations at issue, the declarations are barred by the parole evidence rule as evidence offered to explain what the agreement was. Accordingly, the court HEREBY SUSTAINS  Defendants' objections to specified portions of these declarations on that ground.

Declaration of Libano Mendes

Defendants object to paragraphs 7, 8, 9, 10:9-11, 11:15-17, 12:21-25 and 13 of the Declaration of Libano Mendes as irrelevant and barred by the parole evidence rule.  These paragraphs provide as follows:

> 7.   I was not provided with copies of the CCA By-laws to give to growers when signing them up to contracts with the CCA and White Gold.

> 8.   During my employment with White Gold, I received no training or explanation concerning the details of the "CCA Enrollment and Agent Contract" forms.

> 9.   I was not told during my employment by White Gold that the "CCA Enrollment and Agent Contract" was not a stand-alone document and that the contracts contained reference to an arbitration provision in the CCA By-Laws, and I was not trained to explain that fact and its implications to grower members of the CCA serviced by White Gold.

> 10:9-11.  I did not show or provide a copy of the CCA By-laws to Four J Farms and its partner, Frank Junio, and I did not discuss arbitration with Four J Farms at any time during the process of signing Four J Farms up with White Gold.

> 11:15-17.  I did not show or provide a copy of the CCA By-laws to Mr. Fernandes, and   I did not discuss arbitration with Mr. Fernandes at any time during the process of signing Four J Farms up with White Gold.

> 12:21-25.  I did not show or provide a copy of the CCA By-laws to David Mendonca or   anyone else with the COS Agriculture Division at any time during the process of signing the COS Agricultural Division up with White Gold.

> 13.   I did not provide any of the above- referenced cotton produces a copy of the CCA By-laws when the [sic] signed the CCA Enrollment and Agent Contract,

14

or at any time prior to or after their signing the Contract.  This is so because the By-laws were neither provided to me or [sic] explained to me by my employer, White Gold, its president Mark Costa, its vice president, Craig Tobin, or otherwise.

Defendants make the same relevance objection to these paragraphs of the Mendes declaration that they did to the Fernandes, Mendonca and Junio declarations.  That is, they argue that the paragraphs are irrelevant because Plaintiffs have judicially admitted in their Complaint that the terms of the contract at issue in this case include both the CCA Enrollment and Agent Contract and the CCA By-Laws.  The court agrees with Plaintiffs that Mr. Mendes, who is not a party to this action, is not bound by the allegations made in the complaint.  The court further finds that these paragraphs in no way attempt to explain or even comment upon the terms of the agreement between the parties.  The court finds, therefore, that they are not precluded by the parole evidence rule.  Accordingly, Defendants' objection to these paragraphs of the Mendes declaration are OVERRULED.

Supplemental Declaration of Neal P. Gillen

Filed as Exhibit A to Plaintiffs' Response to Objection to Declarations of Neal P. Gillen, Michael Stump, Jonathan Todd Fernandes, David Mendonca, Frank Eugene Junio and Libano Mendes is the supplemental declaration of Neal P. Gillen.  Defendants object to that supplemental declaration on several evidentiary grounds.  Initially, however, Defendants object to the supplemental declaration on the ground that although it was filed as an exhibit to Plaintiffs' Response to Defendants' Objection, the face page of Plaintiffs' Response and the content of the supplemental declaration indicate that it is a separate document.  They argue that the supplemental declaration seeks to offer several new substantive facts that were not raised as part of Plaintiffs' opposition briefing, and contains substantial new argument.  Defendants contend that the supplemental declaration therefore constitutes an improper surreply  which must be stricken.  Plaintiffs have not responded to Defendants' objection to the surreply.

The court agrees with Defendants that the supplemental declaration seeks to offer new

15

facts and make new arguments not raised in Plaintiffs' opposition.  Thus, the court finds that the supplemental declaration amounts to a surreply.  Rule 78-230 of the Local Rules for the Eastern District governs civil motion procedure in this court and does not provide for the right to file surreply.  Similarly, the Federal Rules of Civil Procedure do not provide for such a right.  Therefore, without permission from the court there a civil litigant in this court may not file a surreply.  No such permission was sought or obtained in this case.  Accordingly, Defendants' objection to the supplemental declaration of Neal P. Gillen is HEREBY SUSTAINED and the supplemental declaration is HEREBY STRICKEN.

Requests for Judicial Notice

In their initial request for judicial notice, Defendants ask the court to take judicial notice, pursuant to Rule 201(b), Federal Rules of Evidence, of four items.  Under Rule 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The first item is the Complaint filed on November 14, 2006, in College of the Sequoias Farm et al. v. White Gold Association, Inc. et al.   A copy of the Complaint was filed in this case along with the notice of removal, and is thus part of the record in this case.  Accordingly, Defendants' request is GRANTED as to the Complaint.

The second item is a copy of the By-laws of the Cotton Cooperative Association.   The court hereby GRANTS Defendants' request to take judicial notice of this item.

The third item is the fact that White Gold is an active member in good standing as a Merchant Firm of the American Cotton Shippers Association and is current in payment of all dues and fees.  Defendants support the request for judicial notice with a copy of the Members Details available on the American Cotton Shippers Association website. The court hereby GRANTS  Defendants' request to take judicial notice of this item.

The fourth item which Defendants request this court to take judicial notice of is the fact that this case was removed to this court on January 4, 2007.  This is a matter of record, documented on the docket of this case.  The court hereby GRANTS  Defendants' request to take judicial notice of this item

In their supplemental request for judicial notice Defendants ask the court to take judicial notice of four additional items.  The first item is the judgment entered in favor of Mark Costa and against Jeff Smith & Sons, Inc. in Kern County Superior Court, case No. S-1500-CV-254278 SPC.  Defendants provide a copy of the judgment.  The court hereby GRANTS this request.

The second item is the face page for the current complaint filed in Kern County Superior Court, Case No. S-1500-CV 254679 SPC.  Defendants provide a copy of the face page.  The court hereby GRANTS this request.

The third item is the face page of the current cross-complaint pending in Kern County Superior Court, Case No. S-1500-CV 254679 SPC.  Defendants provide a copy of the face page.  The court hereby GRANTS this request.

The fourth item is the a list of Board Members for American Cotton Shippers Association, showing Ernst D. Schroeder, Jr. listed as one of the Board Members.  Defendants provide a copy of the list.  The court hereby GRANTS this request.

## DISCUSSION

Impossibility Defense

In initially reviewing the parties' arguments, the court concluded that Plaintiffs appeared to be asserting an impossibility defense to the arbitration provision contained in Section 11.14 of the CCA By-Laws.  The court found that, as Defendants noted in their reply to Plaintiffs' opposition to the petition for order compelling arbitration, Plaintiffs apparently sought to offer evidence to contradict the "any and all" language in Section 11.14, claiming that the arbitration provision covers only "disputes as to matters of cotton "grade, quality,

17

weights or fulfillment of contracts." Defendants argued that evidence of such a limitation of the scope of the arbitration provision is barred by the parole evidence rule.

Finding that the resolution of the issue of the existence of an impossibility defense might moot the need for further analysis of the petition for order compelling arbitration, the court entered an order on April 18, 2007, requiring additional briefing from the parties on the following issues: 1) the existence of an impossibility defense to the enforcement of the arbitration clause contained in Section 11.14 of the CCA By-Laws; 2) the application of the parole evidence rule to any evidence used to support this impossibility defense; and 3) the need for a jury trial as to any issues of fact connected with the impossibility defense.

In response to this court's order, Plaintiffs filed a supplemental brief in which they argue that an impossibility defense does exist to Defendants' petition for an order compelling arbitration, in that Defendants seek performance of something that is "impossible in the nature of things," under California Civil Code Section 1597.

Impossibility of performance is an affirmative defense and the burden of proof in establishing it rests on the party asserting the defense. Hensler v. City of Los Angeles, 124 Cal.App.2d 71, 83 (1954); San Mateo Community College Dist. v. Half Moon Bay Partnership, 65 Cal.App.4th 401, 414 (Cal.Ct.App. 1998)(citing Butler v. Nepple, 54 Cal.2d 589, 599 (Cal. 1960). The classic doctrine of impossibility addresses only impossibility which lies in the nature of things to be done, which is referred to as "objective impossibility." It does not concern inability or unwillingness on the part of the promisor to perform under the contract, even when performance leads to hardship. Hensler, 124 Cal.App.2d at 83. Under California law, the doctrine has been expanded to include not only objective impossibility, but also impracticability related to the difficulty and expense of the undertaking consisting of performance. Kennedy v. Reese, 225 Cal.App.2d 717, 724-25 (1964).

Plaintiffs contend in their supplemental brief that the performance sought by Defendants, i.e., submitting their claims to arbitration before the ASCA is not possible for the

18

reasons articulated by Neal Gillen in his declaration submitted along with Plaintiffs' original

opposition papers.   Mr. Gillen is General Counsel and Executive Vice President of the

ACSA.  Plaintiffs rely on first declaration  of Mr. Gillen in which he opines as follows:

> 1) The statute of limitations set forth in the procedure that controls the ACSA Arbitration in the case of Plaintiffs' claims has expired.  First Gillen Declaration, section 3(A).

> 2) The applicable rules for cotton produced in California are the Western Cotton Shippers Association Rules, and thus the subject matter of Plaintiffs' claims are outside the jurisdiction and capability of ACSA arbitration and arbitrators.  If the court granted Defendants' petition to compel arbitration,  the court would be compelling Plaintiffs to arbitrate their claims before a body both incapable and unwilling to hear them.  First Gillen Declaration, section 3(B).

> 3) Because the claims by Plaintiffs are so far beyond the scope of the usual "matters of grade, quality, weights or fulfillment of contracts" for reasons of both the associated expense and the lack of expertise of the panel arbitrators, the ACSA cannot handle the legal issues raised in Plaintiffs' complaint.  First Gillen Declaration, Section 3(B).

In regard to the issue of the application of the parole evidence rule to their evidence

offered to support the impossibility defense, Plaintiffs argue that nothing in Mr. Gillen's

declaration is evidence offered by Plaintiffs of either a prior agreement of the parties

contradictory of the written contract at issue, or evidence of contemporaneous oral agreement

between the parties which seeks to contradict, modify or even explain the nature of the

contract undisputedly applies to this case.  Plaintiffs argue that the parole evidence rule does

not prohibit the introduction of evidence such as Mr. Gillen's declaration, offered to establish

a defense, such as the defense of impossibility.

In regard to the court's last inquiry, Plaintiffs submit that the determination of

objective impossibility can and should be made as a matter of law.  Stating that there are no

factual issues to be resolved by a jury in regard to the impossibility defense, Plaintiffs argue

that  this determination should be made by the court, not be a jury

In their supplemental brief, Defendants address the fact that in their original

opposition, Plaintiffs offer not only the declaration of Mr. Gillen, but also their own

declarations regarding their understanding as to the extent of the application of the arbitration

provision.  Defendants contend that these personal declarations of Plaintiffs go to Plaintiffs'

interpretation of the agreement - and not the alleged defense of impossibility.  Further,

Defendants argue that these declarations are barred by the parole evidence rule, as they seek

to contradict the plain language of the arbitration provisions at issue here, which state that

arbitration is available for "any and all disputes."

It does not appear that Plaintiffs are seeking to rely on their own declarations in

support of the proffered impossibility defense, but rather rely on the declaration of Mr. Gillen.

They present no argument based on their own declarations, and contend that "[t]his Court can

and should determine that performance by plaintiffs in the form of submitting claims to

arbitration before the American Cotton Shippers Association ("ACSA") is not possible for the

reasons articulated by Neal Gillen in the opposition papers."  Plaintiffs' Supplemental Brief,

2:19 -21.  However, because Plaintiffs have not expressly stated that they do not offer their

own declarations in support of the impossibility defense, and for the sake of clarity, the

HEREBY FINDS those declarations barred by the parole evidence rule to the extent that they

may be offered as evidence of the meaning of the arbitration provision.

Defendants concede in their supplemental brief that the declaration of Mr. Gillen

relates to the impossibility defense, but contend that each of the three grounds asserted by

Plaintiffs in support of the impossibility defense fails.[2]  Plaintiffs' first ground asserted in

---

[2]The court notes that the main evidentiary support for  Plaintiffs' impossibility argument
is Mr. Gillen's declaration.  Because Defendants respond to Plaintiffs' arguments (and Mr.
Gillen's assertions) on the merits, the court will not consider Defendants' evidentiary objections
to Mr. Gillen's declaration in resolving the merits of the impossibility argument.

support of the impossibility defense is based on Mr. Gillen's assertion that the arbitration would not be accepted because Plaintiffs did not timely seek arbitration. "The time limitation to file an ACSA Arbitration has expired as Section 3(C) requires that 'the original complaint in connection with any disputed matter proposed by arbitration must be filed within 90 days after the expiration date for performance of the contract or contracts involved . . ." First Gillen Declaration, section.3(A). Defendants argue that the deadline referred to by Plaintiffs and Mr. Gillen is inapplicable here, and, in any event, even if the deadline applied , Plaintiffs could not use their own failure to comply with that deadline as the basis of any impossibility defense.

As Defendants argue, the full text of Section 3(C) of the ACSA Arbitration Rules demonstrates that the 90-day rule does not present a bar to the ACSA accepting this dispute for resolution. Section 3(C)provides in its entirety:

> The original complaint in connection with any disputed matter proposed for arbitration must be filed within 90 days after the expiration date for performance of the contract or contracts involved. For cases between a member and nonmember arbitrated pursuant to court order, the complaint must be filed by either or both parties within 30 days of issuance of court order.

Thus, as Defendants contend, the ACSA rules expressly allow a member such as Defendant White Gold to seek a court order to compel a non-member to arbitrate a dispute, notwithstanding the non-member's own failure to file a complaint for arbitration. It is undisputed that Plaintiffs are not members of ACSA. Section 3 requires ACSA to accept the arbitration as long as the arbitration complaint is filed within 30 days of the issuance of the court's order compelling arbitration. The court agrees with Defendants that if Mr. Gillen were correct, a non-member who wished to avoid arbitration could purposefully do so by simply waiting until the expiration of the 90-day period to file suit, therefore rendering performance "impossible." Under California law, a party to a contract cannot take advantage of his own act or omission to escape liability. See Pacific Venture Corp.. 15 Cal.2d at 717 ("It appears to be well settled that a person cannot avoid liability for the nonperformance of an

obligation by placing such performance beyond his control by a voluntary act.").

In regard to Plaintiffs' second argument that performance under the arbitration provision would be impossible because the rules of the Western Cotton Shippers Association rather than those of ACSA would apply to the instant dispute, Defendants contend that Plaintiffs are simply mistaken.   Plaintiffs appear to rely on the portion of Mr. Gillen's declaration where he opines, without citation to any authority, that "since the CCA contract does not specify an arbitration location for contracts for cotton produced in California , the rules of the Western Cotton Shippers Association (WCSA) would govern the transaction as these rules govern the trade of cotton in California."  First Gillen Declar., Section 5.

Defendants contend that this assertion should be rejected by the court from the outset because it is unsupported.  They also contend that it should be rejected because it is contradicted by ACSA's own requirements and rules.   The ACSA requirements to arbitrate state as follows:

> To arbitrate a disputed matter with an ACSA member, when the contract does not specify arbitration before the Atlantic Cotton Association, Southern Cotton Association, Texas Cotton Association, or the Western Cotton Shippers Association, or if there is no written contract and these fora are not available, the matter in dispute will be decided by an arbitration committee appointed by the American Cotton Shippers Association and composed of member familiar with the trading rules and customs and practices of the trade in that region.  ACSA will also arbitrate contracts where the contract between the parties specifies ACSA arbitration.

The court finds that none of the contracts at issue specify that the arbitration will be before any of the other associations. Costa Decl., Exhibits A - G.   Instead, all of the contracts specify arbitration before ACSA.  Id.  Thus,  under ACSA's own rules, ACSA is the forum for the arbitration, not the WCSA.

Mr. Gillen further suggests that the ACSA Arbitration Rules do not apply here, and that instead ACSA would need to apply the rules of the Western Cotton Shippers Association.  Mr. Gillen states:

> [S]ince the CCA contract does not specify an arbitration location for contract for cotton produced in California, the rules of the Western Cotton Shippers Association

(WCSA) would govern the transaction as these rules govern the trade of cotton in California.

Orig. Gillen Decl., 5.  However, Defendants correctly argue that this statement is also contradicted by ACSA's own arbitration rules.  Specifically, the Jurisdiction section to the ACSA Arbitration Rules states, in part, as follows:

> If the contract in dispute between a member and nonmember provides for arbitration pursuant to these Arbitration Rules, or if a contract between nonmembers stipulates or references that the contract is subject to these rules or the ACSA Special Rules, the parties to the contract shall be deemed to have consented to arbitration under these Arbitration Rules.

Plaintiffs' RJN, Exhibit 3,§ 3(a)(2).

The contracts at issue here specifically provide for arbitration pursuant to ACSA's arbitration rules.  The contracts provide that "any and all disputes" "shall be subject to arbitration in accordance with the rules of the American Cotton Shippers Association."  Thus, the court finds that ACSA's own rules clearly provide that ACSA has jurisdiction over the arbitration.   Nowhere in Mr. Gillen's declaration or elsewhere do Plaintiffs argue that  any limitation exists as to the claims considered in arbitration by ACSA.  Thus, any claims by Plaintiffs, based on Mr. Gillen's first declaration, as to the limitation of claims arbitrable before the WCSA, provide no basis for arguing that such a limitation would exist in this case.

In light of the above, the court HEREBY FINDS that Plaintiffs have failed to carry their burden in relation to their impossibility defense regarding the enforcement of the arbitration provision.  While Mr. Gillen's first declaration is clearly relevant on the issue of impossibility and are not barred by the parole evidence rule to the extent that it is offered  on that issue, it does not establish impossibility.  Mr. Gillen's declaration provides his interpretation of the application of certain provisions of the ACSA Arbitration Rules.  However, as set forth above,  Defendants have provided substantial evidence in the form of the Rules themselves which demonstrates that Mr. Gillen's interpretation may be incorrect.  The court notes  that Plaintiffs do not attempt to refute Defendants' evidence concerning the

plain language of the Rules in their supplemental reply brief.

Fiduciary Relationship

Plaintiffs contend that by virtue of the contract between Plaintiffs and Defendants (as the agent of the CCA), Defendants were the fiduciaries of Plaintiffs.   Plaintiffs also separately contend that as the agent for a cotton cooperative marketing association, Defendants were the fiduciaries of Plaintiffs as a matter of law.  They claim that as a result of this fiduciary relationship, Defendants owed Plaintiffs a duty to act in the utmost good faith, being forbidden from obtaining any profit or advantage in their dealing with Plaintiffs.

Plaintiffs conclude  that the alleged special or fiduciary relationship between Plaintiffs and Defendants, together with Defendants' failure "to disclose and explain their view of the arbitration clause buried in the CCA By-Laws," is grounds upon which this court should deny Defendants' petition.  In support of this contention, Plaintiffs rely on Dinsmore v. Piper Jaffray Inc., 593 N.W.2d 41 (S.D. 1999), in which the plaintiff David S. Dinsmore ("Dinsmore") sought to avoid  arbitration provisions contained in several contracts signed between himself and his broker and brokerage firm, the defendants ("Piper").  The trial court denied Piper's motion to compel arbitration, concluding that it owed Dinsmore a fiduciary duty to advise him of the presence of the arbitration provisions in the contracts because of a pre-existing fiduciary relationship and that Piper breached this duty by failing to make an oral disclosure.  The Supreme Court of South Dakota reversed.

In rejecting the trial court's analysis, the Supreme Court of South Dakota found that "[w]hile a fiduciary duty does exist between securities brokers and their clients, fiduciary duties are not owed when the parties are dealing at arm's length." Id. at 46.  In analyzing the facts of the case, the court found as follows:

> The contracts in this case govern the nature and extent of the business relationship between Dinsmore and Piper. They allow Dinsmore the opportunity to participate in differing types of securities trades and/or otherwise set forth the circumstances under which the two will do business together. By the actual process of negotiating and executing these contracts Piper does not manage Dinsmore's property nor does it act for or on behalf of Dinsmore. Piper acts on its own behalf.

Id. at 47.  The Supreme Court of South Dakota  went on to find:

> The agreements in this case appear to be arms length contracts which pre-suppose that there is no fiduciary duty to explain each and every term of the same. However, under the facts of this case we do not have to reach this issue. We hold that the bold-faced, clear, and conspicuous notices, designed to alert a signer to the presence of the pre-dispute arbitration clauses, discharged any duty that Piper had to act with the utmost good faith in its relations with Dinsmore. Given the nature of these notices we fail to see any good reason why an oral notice must also be given to discharge any duty owed to Dinsmore.

Id. at 47.

This court finds that the Dinsmore opinion offers little support for Plaintiffs' position. Plaintiffs do not claim that the contract at issue in the present case was not an "arm's length" contract, negotiated at the formation of the relationship between Plaintiffs and Defendants. The court finds that the contract at issue was indeed such an "arm's length" contract.  Thus, under Dinsmore, Defendants did not owe Plaintiffs a fiduciary duty in connection with the negotiation of the contract.  Further, Plaintiffs specifically aver in their complaint that they read, agreed to, and acknowledged receipt of the CCA By-Laws which contains the arbitration provision, which amounts to a judicial admission.  As was the case in Dinsmore, the arbitration provision at issue is conspicuously marked.  The provision is  clearly marked "**ARBITRATION**" in bold font and capital letters.

Accordingly, the court finds without merit Plaintiffs' claim that a special fiduciary relationship between Plaintiffs and Defendants, combined with Defendants' failure to explain their view of the arbitration claims, supports denial of the petition for an order compelling arbitration.

Meeting of the Minds

Plaintiffs contend that the court should not compel arbitration in this case, because the parties did not agree to arbitrate as the sole and exclusive forum for resolution of the allegations set forth in the Complaint.  Plaintiffs concede that under the operative provision of

the CCA By Laws, disputes as to matters of cotton "grade, quality, weights or fulfillment of contracts," are subject to "adjustment" under the procedures and rules for arbitration adopted by the ASCA and WCSA.  They argue, however, that there was a lack of an agreement between the parties to submit the issues raised in the Complaint to arbitration.

In response, Defendants argue that Plaintiffs' claim that they did not agree to arbitrate the claims in the complaint is contrary to admissions made in the Complaint.  Defendants rely on the language of the Complaint that the "contract terms are set forth in the combination of two separate documents: (1) the "CCA Enrollment and Agent Contract": and (2) the CCA By-Laws.  Defendants argue that the allegations in the Complaint further establish that each Plaintiff signed the contracts at issue and that the contracts include the CCA By-Laws, which set forth the arbitration provision.

The court agrees with Defendants that Plaintiff's claim is contrary to the judicial admissions made in the complaint.  Further, as discussed above in connection with Plaintiffs' impossibility defense, the court is unpersuaded by Plaintiffs' interpretation of the contract, as based on Mr. Gillen's first declaration.

Plaintiffs further argue that because the scope of the CCA By Laws does not include arbitration that would address any of the issues raised in the Complaint, Defendants cannot meet their burden to show that there has been a "failure, neglect, or refusal" by Plaintiffs to submit to arbitration before the ACSA or WCSA, as is required for relief under 9 U.S.C. § 4.  The court rejects this argument for the reasons discussed above in connection with Plaintiffs' impossibility defense.

Accordingly, the court finds that Plaintiffs have failed to demonstrate that there has been no meeting of the minds in regard to the arbitration agreement.

Unconscionability

Plaintiffs contend that even if the court were to reject their arguments that there is no agreement to arbitrate the disputes raised in the complaint, the court should still deny the

petition for an order compelling arbitration on the ground of unconscionability.  Plaintiffs first claim that the arbitration clause is procedurally unconscionable because it was buried in the CCA By-Laws and it was never explained or "detailed" to Plaintiffs notwithstanding the fiduciary duties owed to Plaintiffs by Defendants.   The court has previously rejected Plaintiffs' claim that Defendants owed a fiduciary duty to Plaintiffs in connection with the formation of the contract, and has noted that the arbitration clause is set off by a heading in bold font and all capital letters.

Second, Plaintiffs claim, relying on the first Gillen declaration, that because the CCA contract does not specify an arbitration location for contracts for cotton produced in California, the rules of the WCSA would govern the transaction as these rules govern the trade of cotton in California.   Under the WCSA rules only "matters of grade, quality, weights or fulfillment of contracts" can be arbitrated.  Plaintiffs argue that the matters contested in this case are beyond those matters and are therefore outside the scope of the ACSA's arbitration. They argue that the ACSA arbitrators are selected from the cotton industry, are not trained auditors or investigators, and are lacking the qualifications to consider matters such as are raised in the present complaint. Again, the court has previously rejected Plaintiffs' claim that the rules of the WCSA would apply in this case.  Thus, the court finds that Plaintiffs have not demonstrated that the arbitration clause at issue is procedurally unconscionable.

Third, Plaintiffs claim that any ruling granting Respondent's petition would be unconscionable and unenforceable, because the arbitration rules and procedures dramatically shorten the time to file a complaint. Relying on the first Gillen declaration, Plaintiffs assert that the forum for the arbitration sought by Defendants requires that "the original complaint in connection with any disputed matter proposed by arbitration must be filed within 90 days after the expiration date for performance of the contract or contracts involved . . ."  Plaintiffs note that this 90 days is substantially less than the statutes of limitations provided for under California law.  Thus, Plaintiffs argue that the arbitration clause is substantively

1   unconscionable.

2       This argument was addressed and rejected by the court in connection with Plaintiffs'

3   impossibility defense.  Specifically, the ACSA arbitration rules provide that in the case of a

4   dispute involving a member and a nonmember, the arbitration must be initiated within 30 days

5   of the court order compelling arbitration.  Thus, the 90-day rule is not applicable in terms of

6   the pending petition to compel arbitration, and Plaintiffs have not been deprived of the

7   opportunity to pursue their claims.  Accordingly, the court finds that Plaintiffs have failed to

8   demonstrate the existence of substantive unconscionability.

9

10

11

12                                            **ORDER**

13       In light of the foregoing, IT IS HEREBY ORDERED as follows:

14   1)   Plaintiffs' request for a jury trial pursuant to 9 U.S.C. Section 4 is DENIED;

15   2)    Defendants' petition for order compelling arbitration and request for stay pending

16       arbitration is GRANTED;

17   3)   The parties shall comply with Section 3(C) of the ACSA Arbitration Rules by jointly

18       filing a complaint for arbitration with the ACSA within thirty (30) days of the date of

19       service of this order;

20   4)   This case is STAYED pursuant to 9 U.S.C. Section 3 pending further order of this

21       court.

22

23

24

25       IT IS SO ORDERED.

26   **Dated:    July 6, 2007**             _____/s/  **William M. Wunderlich**_____
                                           UNITED STATES MAGISTRATE JUDGE

27

28                                            28